**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br><br>APPLICATION OF GD S.À R.L.,<br><br>PETITIONER, FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING. | Misc. Case No. 1:26-mc-520 |

# MEMORANDUM OF LAW IN SUPPORT OF EX PARTE PETITION FOR AN ORDER DIRECTING DISCOVERY PURSUANT TO 28 U.S.C. § 1782

# TABLE OF CONTENTS


**Page**

PRELIMINARY STATEMENT ........ 1

BACKGROUND ........ 2

A. Couderc Surreptitiously Transfers Menlo Park Capital's General Partner Position in SGH Capital For $1 ........ 2

B. The Luxembourg Proceedings ........ 3

C. ASTATE Attempts to Transfer SGH Capital's Shares in Scentbird to ASTATE Itself ........ 4

ARGUMENT ........ 6

I. Legal Standard ........ 6

II. Petitioner's Application Satisfies the Statutory Requirements of Section 1782 ........ 7

A. Cooley is "Found" in the Southern District of New York. ........ 8

B. Petitioner Seeks Discovery For Use in Pending Foreign Proceedings. ........ 9

C. Petitioner is an Interested Person. ........ 10

III. The Discretionary Intel Factors Weigh in Favor of Permitting the Discovery Petitioner Seeks. ........ 11

A. The Relevant Discovery Is Not Accessible Absent Section 1782 Aid. ........ 11

B. The Luxembourg Court Will Be Receptive to Evidence Obtained Through This Application. ........ 12

C. Petitioner Is Not Attempting to Circumvent Foreign Proof-Gathering Restrictions. ........ 13

D. This Application Is Not Unduly Intrusive or Burdensome. ........ 15

CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alerte Congolaise Pour L'environnement Et Les Droits De L'homme v. Symbion Power LLC*,
25 Misc. 480 (PAE), 2026 WL 2151394 (S.D.N.Y. July 27, 2026)....14, 15

*In re Application of Auto-Guadeloupe Investissement S.A., for an Order to Take Discovery Pursuant to 28 U.S.C. Section 1782*,
No. 12 MC 221(RPP), 2012 WL 4841945 (S.D.N.Y. Oct. 10, 2012)....12

*In re Application of Mediterranean Shipping Co. S.A.*,
Case No. 1:25-mc-00598 (JLR), 2026 WL 1256429 (S.D.N.Y. May 7, 2026)....12

*In re B&C KB Holding GmbH*,
22-mc-00180 (LAK) (VF), 2023 WL 1777326 (S.D.N.Y. Feb. 6, 2023)....13, 14

*In re Blue Skye Fin. Partners S.A.R.L.*,
No. 22 Misc. 171 (KPF), 2022 WL 2441074 (S.D.N.Y. July 5, 2022)....10, 13, 14

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
673 F.3d 76 (2d Cir. 2012)....6, 7

*In re Del Valle Ruiz,*
939 F.3d 520, 528 (2d Cir. 2019)....8

*In re Edelman*,
295 F.3d 171 (2d Cir. 2002)....7

*Euromepa S.A. v. R. Esmerian, Inc.*,
51 F.3d 1095 (2d Cir. 1995)....12, 15

*Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*,
27 F.4th 136 (2d Cir. 2022)....11, 13

*In re Furstenberg Fin. SAS*,
18-mc-44 (JGK), 2018 WL 3392882 (S.D.N.Y. July 12, 2018)....10

*Gushlak v. Gushlak*,
486 F. App'x 215 (2d Cir. 2012)....7

*Matter of HSBC Sec. Servs. (Luxembourg) S.A.*,
No. 26-MC-00109 (MMG), 2026 WL 1298453 (S.D.N.Y. May 12, 2026)....9, 11, 13, 15

*Intel Corp. v. Adv. Micro Devices, Inc.*,
542 U.S. 241 (2004)....*passim*

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*,
895 F.3d 238 (2d Cir. 2018)....................11

*Mees v. Buiter*,
793 F.3d 291 (2d Cir. 2015)....................10, 14, 15

*In re Novalpina Cap. Partners I GP S.À.R.L.*,
23 Misc. 25 (PGG), 2025 WL 1160854 (S.D.N.Y. Apr. 21, 2025)....................10, 13

*In re Polygon Glob. Partners LLP*,
No. 21 MISC. 364 (ER), 2021 WL 2117397 (S.D.N.Y. May 25, 2021)....................8, 9

*In re Porsche Automobil Holding SE*,
2016 WL 702327....................11, 13, 14

*In re Steinmetz*,
20-mc-212 (AJN), 2022 WL 170851 (S.D.N.Y. Jan. 19, 2022)....................9

*In re Tel. Media Grp. Ltd.*,
23-MC-215, 2023 WL 5770115 (S.D.N.Y. Sept. 6, 2023)....................11

*In re Tuohy*,
24-mc-605 (GHW) (OTW), 2025 WL 1147574 (S.D.N.Y. Apr. 18, 2025)....................9

**Statutes**

28 U.S.C. § 1782.................... *passim*

**Other Authorities**

Fed. R. Civ. P. Rule 26....................15

Petitioner GD S.à r.l., by and through its undersigned counsel, hereby submits this memorandum of law in support of its Petition for an Order Directing Discovery for Use in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782, which seeks an order from this Court allowing Petitioner to seek document discovery from Cooley LLP ("Cooley") in the form of a subpoena *duces tecum* attached as Exhibit A to the Declaration of Daniel E. Joiner (the "Joiner Declaration") for use in Petitioner's litigation in Luxembourg against Dimitri Couderc and ASTATE S.à r.l. ("ASTATE").

## PRELIMINARY STATEMENT

This petition arises from a series of proceedings in Luxembourg between Petitioner on the one hand and Dimitri Couderc and his associated entities, including ASTATE, on the other. Petitioner recently learned that ASTATE, purporting to act as liquidator of SGH Capital 1 SLP ("SGH Capital"), attempted to transfer to itself shares that SGH Capital owned in Scentbird Inc. ("Scentbird"), a private company. Cooley was counsel to Scentbird in connection with ASTATE's attempted transfer. SGH Capital is a Luxembourg venture fund that was initially formed by two entities: Petitioner's predecessor entity, Menlo Park Capital, and Caibuo Capital, which Couderc owned. Couderc took over control of SGH Capital in December 2020 by transferring Menlo Park's general partnership interest in SGH Capital to another Couderc vehicle for $1 USD. Petitioner is contesting the validity of this transfer of its general partner interest as part of existing legal proceedings in the Luxembourg District Court.

Petitioner responded to ASTATE's attempted transfer of SGH Capital's Scentbird shares by alerting Cooley that ASTATE's authority to engage in the transaction was being disputed in Luxembourgish court proceedings and by seeking provisional relief in Luxembourg District Court that would either replace ASTATE as SGH Capital's liquidator or have a co-liquidator appointed. The Luxembourg court affirmed that Petitioner has an interest in obtaining the

provisional relief but denied the relief without prejudice, finding insufficient evidence of malfeasance because ASTATE's attempted share transfer was not completed (after Petitioner put a halt to it). Through this Section 1782 proceeding, Petitioner seeks narrow discovery from Cooley – Scentbird's counsel in connection with the halted transaction – so that it can obtain communications between ASTATE and Cooley related to ASTATE's attempt to transfer SGH Capital's Scentbird shares to ASTATE itself. This discovery could be critical to Petitioner obtaining the relief it seeks in the Luxembourg proceedings.

## BACKGROUND

### A. Couderc Surreptitiously Transfers Menlo Park Capital's General Partner Position in SGH Capital For $1

In 2015, Menlo Park and Caibuo established SGH Capital, a Luxembourgish venture fund that held shares in emerging private companies. Deback Decl. ¶ 2. Menlo Park and Caibuo served as co-general partners, and the votes of both general partners were needed for major decisions. *Id.*

Unbeknownst to Alexandre Azoulay and Guillaume Deback, Menlo Park's principals at the time, Couderc purported to transfer Menlo Park's general partnership interest in SGH Capital to his own vehicle, Squale Capital ("Squale"), for $1 USD in December 2020. *Id.* ¶ 3. Based on anticipated management fees and carried interest, that general partnership interest had an expected value in excess of $1,000,000 USD. *Id.* In the same month, Couderc convened an SGH Capital shareholders' meeting and passed a resolution that replaced Menlo Park with Squale as co-general partner and manager of SGH Capital. *Id.* As a result, Menlo Park lost its position as co-general partner of SGH Capital and the revenue that would come from that position.

B. The Luxembourg Proceedings

In January 2021, Azoulay and Deback learned through a register publication of Couderc's purported transfer of Menlo Park's general partnership interest in SGH Capital and the resolution replacing Menlo Park with Squale. *Id.* ¶ 3. Once Petitioner learned of the transfer, it initiated two proceedings in Luxembourg District Court, one to annul the transfer of Menlo Park's partnership interest and another to annul the resolution that replaced Menlo Park with Squale as general partner and manager of SGH Capital. *Id.* ¶ 5; Komninos Decl. ¶ 10. These Luxembourg proceedings remain pending. Komninos Decl. ¶ 11.

In February 2021, the Luxembourg court ordered that the general partner interest that belonged to Menlo Park be placed under judicial sequestration pending resolution of the court proceedings. Komninos Decl. ¶ 9. The order appointed an independent custodian to hold the disputed interests' conservation and voting rights. Deback Decl. ¶ 4. The sequestration order remains in force today. *Id.*

In July 2025, Squale and Caibuo signed a resolution declaring SGH Capital dissolved and appointing ASTATE as SGH Capital's liquidator with power to act "under its sole signature." *Id.* ¶ 7. ASTATE had been incorporated on June 17, 2024, at the same address as Caibuo, Squale, and SGH Capital. *Id.* ¶ 8. Couderc owns half of ASTATE and co-manages it with his associate, Cedric Cerf, who owns the other half of ASTATE through an investment vehicle. *Id.* Caibuo and Squale made this purported appointment of ASTATE even though the votes of both partners are necessary to appoint a liquidator and Menlo Park's general partnership interest is under judicial sequestration and controlled by a sequestrator. *Id.*

### C. ASTATE Attempts to Transfer SGH Capital's Shares in Scentbird to ASTATE Itself

In May 2026, Petitioner learned that ASTATE attempted to transfer SGH Capital assets to ASTATE itself as transferee. *See* Deback Decl. ¶¶ 10–13. Specifically, ASTATE attempted to have one portfolio company of SGH Capital, Scentbird, update its shareholder records to reflect that SGH Capital had purportedly transferred 5,545 shares of Scentbird's Series A-8 Preferred Stock to ASTATE. *Id* ¶¶ 9–13.

On May 15, 2026, Scentbird's New York-based counsel at Cooley circulated a DocuSign execution package that included two key documents: (1) a Transferor Representation Letter and Stock Power for SGH Capital as transferor and (2) a Transferee Representation Letter, Joinder and Adoption Agreement for ASTATE as transferee. Deback Decl. ¶ 10–11. Presumably based on instructions that it received from ASTATE, an attorney associated with Cooley's New York office sent the execution package to Cerf at his email address, cc@astate.finance, and purportedly to Deback at the email address cs@sghcapital.com. *Id.* ¶ 11. But cs@sghcapital.com is an email address previously used by Charles Seely, a former agent of SGH Capital who began working with Couderc after Couderc transferred Menlo Park's general partner interest in SGH Capital to Squale. *Id.* The transfer documents included signature blocks for "Guillaume Deback" as the person acting for SGH Capital, but they used Seely's cs@sghcapital.com email address as Deback's email address and identified Deback with the title "GP of SGH SLP." *See id.* ¶¶ 11-12. Neither that entity nor that title exists, and Deback never authorized the transfer. *Id.* ¶ 12.

Later that day, after discovering the attempted fraud, Petitioner sent urgent notices to Scentbird and Cooley informing them that ASTATE was improperly seeking to transfer shares owned by SGH Capital to itself or affiliated parties. *Id.* ¶ 13. Petitioner informed Scentbird and

Cooley that there were ongoing legal proceedings, including proceedings in the Luxembourg courts regarding whether the SGH Capital fund structure was wrongly diverted from Menlo Park. *Id.* The notice requested that Cooley and Scentbird not register any transfer of SGH Capital's Scentbird shares and that they preserve all relevant communications and records regarding the matter. *See id.* A partner in Cooley's New York office joined the email chain and offered to discuss the situation with Petitioner's counsel. *See* Joiner Decl. ¶ 6.

In June 2026, Petitioner commenced interim proceedings in Luxembourg District Court seeking to either replace ASTATE as liquidator or have a co-liquidator with mandatory joint-signing authority appointed. Komninos Decl. ¶ 13. Petitioner argued that ASTATE's attempted self-dealing was particularly troubling because ASTATE is 50%-owned and managed by Couderc, whose alleged fraudulent conduct is directly at issue in the Luxembourg court proceedings. *Id.* Petitioner further argued that ASTATE's attempted transfer of SGH Capital's assets to itself violated the judicial attachment and sequestration measures in place and created a risk of dissipation of SGH Capital's assets before the merits of Petitioner's claims could be adjudicated. *Id.* In response, ASTATE argued that Petitioner lacked standing to bring the interim proceeding and also opposed the motion on the merits. *Id.*

After a hearing on July 20, 2026, the Luxembourg District Court found that Petitioner has an interest in protecting SGH Capital's assets that may be affected by ASTATE's liquidation operations and that this interest conferred standing on Petitioner to seek relief that would protect those assets. *See id.* ¶ 14. The court, however, denied Petitioner's request to replace or supplement ASTATE as liquidator because it found that the proposed transaction remained in a preparatory state and that Petitioner had not provided sufficient evidence that its completion was imminent. *Id.* ¶ 15. The decision is not a final decision on the merits regarding the disputed

transfer but turned on the evidentiary threshold applicable to the requested interim relief and the absence of sufficient evidence of an imminent transaction or existing breach of any existing order. *Id.* ¶ 16.

## ARGUMENT

Petitioner readily meets the standard under 28 U.S.C. § 1782 to obtain discovery for use in a foreign or international tribunal. Petitioner seeks narrowly tailored discovery to support its efforts in the Luxembourg courts to protect SGH Capital's assets from any potential malfeasance during the liquidation process and to remove ASTATE as liquidator of SGH Capital or install a co-liquidator. Cooley, which is not a party to the Luxembourg legal proceedings, worked on the attempted transfer from its New York office. The Luxembourg District Court has already ruled that Petitioner, a party in the Luxembourg court proceedings, has an interest in protecting SGH Capital's assets through those legal proceedings. In addition, Luxembourg courts are receptive to accepting discovery obtained through foreign proceedings and Petitioner is not circumventing any Luxembourgish rule by obtaining discovery through a Section 1782 proceeding.

### I. Legal Standard

Section 1782 grants district courts the authority to order discovery "for use in a proceeding in a foreign or international tribunal." *Intel Corp. v. Adv. Micro Devices, Inc.*, 542 U.S. 241, 246 (2004) (quoting 28 U.S.C. § 1782(a)). "The goals of the statute are to provide equitable and efficacious discovery procedures in United States courts for the benefit of tribunals and litigants involved in litigation with international aspects and to encourage foreign countries by example to provide similar means of assistance to our courts." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) (internal quotation marks and citation omitted). "In pursuit of these twin goals, the statute has, over the years, been given increasingly broad applicability." *Id.* (internal quotation marks and citation omitted). The

Supreme Court and the Second Circuit have acknowledged congressional intent to provide a liberal avenue to discovery in aid of foreign and international proceedings. *See, e.g.*, *Intel*, 542 U.S. at 247-48; *In re Edelman*, 295 F.3d 171, 180 (2d Cir. 2002) ("In sum, Congress has expressed as its aim that the statute be interpreted broadly.").

Thus, a district court has the authority to grant an application under Section 1782 when three statutory conditions are met: (1) the person from whom discovery is sought "resides (or is found)" within the district; (2) the discovery is "for use in a foreign proceeding before a foreign tribunal"; and (3) the application is made by an "interested person." *Brandi-Dohrn*, 673 F.3d at 80.

After determining that the statutory requirements are satisfied, courts must also consider four discretionary factors: (1) whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach and thus accessible absent Section 1782 aid; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the subpoenas contain unduly intrusive or burdensome requests. *See Intel*, 542 U.S. at 264-65.

Courts often grant discovery applications under Section 1782 *ex parte* because recipients can exercise their right to object through motions to quash. *See Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012).

## II. Petitioner's Application Satisfies the Statutory Requirements of Section 1782.

Petitioner is an interested party in the Luxembourg court proceedings and seeks discovery from Cooley, a law firm found in the Southern District of New York, for use in those court

proceedings. As a result, Petitioner's Section 1782 application satisfies all three statutory requirements.

A. Cooley is "Found" in the Southern District of New York.

In *In re Del Valle Ruiz*, the Second Circuit analyzed Section 1782's "resides or is found" language and concluded that it "extends to the limits of personal jurisdiction consistent with due process." 939 F.3d 520, 528 (2d Cir. 2019). That involves a two-step analysis in which a court (1) assesses the connection between the respondent's "contacts with the forum and the order at issue" to determine if there is either general or specific jurisdiction over the respondent and then (2) decides "whether exercising jurisdiction for the purposes of the order would comport with fair play and substantial justice." *Id.* at 529. In the context of a Section 1782 application, "where the discovery material sought proximately resulted from the respondent's forum contacts, that would be sufficient to establish specific jurisdiction for ordering discovery." *Id.* at 530.[1] "That is, the respondent's having purposefully availed itself of the forum must be the primary or proximate reason that the evidence sought is available at all." *Id.* By contrast, "where the respondent's contacts are broader and more significant, a petitioner need demonstrate only that the evidence sought would not be available but for the respondent's forum contacts." *Id.*

Cooley plainly "resides or is found" in this District. Cooley maintains a New York office that is its largest office by headcount.[2] *See also In re Polygon Glob. Partners LLP*, No. 21 MISC. 364 (ER), 2021 WL 2117397, at *4 (S.D.N.Y. May 25, 2021) ("There is no dispute that KKR, which has an office in Manhattan, is properly 'found' in this district for § 1782

[1] Petitioner believes that Cooley is a California partnership with its principal place of business in California. If Cooley is instead a New York partnership or has its principal place of business in New York, it would also be found in this District under the test for general jurisdiction.

[2] *See* https://www.cooley.com/people#t=cooley-coveo-tab-people-listing&sort=%40personsortname%20ascending&layout=card (last visited September 29, 2026).

purposes."); *accord In re Tuohy,* 24-mc-605 (GHW) (OTW), 2025 WL 1147574, at *3 (S.D.N.Y. Apr. 18, 2025) ("Petitioner has shown that the Banks are 'found' in this District within the meaning of Section 1782 because they all have offices and conduct extensive business in this District."). The Cooley attorney who worked on the transaction in which ASTATE attempted to transfer SGH's Scentbird shares to itself is listed as working in Cooley's New York office, as are the Cooley partner who responded to Petitioner's notice about the transaction and another partner that he also added to the email conversation. *See* Joiner Decl. ¶¶ 3, 5–7. *Cf. In re Polygon Glob. Partners LLP*, 2021 WL 2117397, at *5 (finding that individual respondents who held themselves out as being associated with a New York office had a substantial connection with the District for jurisdictional purposes even if they did no relevant work in the District). And the materials that Petitioner seeks in this application are a subset of communications that were generated through the work done by attorneys in Cooley's New York office. Thus, the evidence being requested and Cooley's forum contacts are directly related. *See*, *e.g.*, *In re Steinmetz*, 20-mc-212 (AJN), 2022 WL 170851, at *4-5 (S.D.N.Y. Jan. 19, 2022) (finding requisite relationship between evidence sought and respondent's activities in District based on meetings in New York that related to issues at core of foreign proceeding).

The exercise of jurisdiction over Cooley in this District is consistent with due process. Cooley maintains its largest office in the District and the relevant documents are undoubtedly accessible here, so it cannot be said that it would be unforeseeable for Cooley to be the subject of a discovery application in this District in connection with work that it did in this District.

B. <u>Petitioner Seeks Discovery For Use in Pending Foreign Proceedings.</u>

Petitioner seeks the materials for use in the Luxembourg proceedings. *See* Komninos Decl. ¶¶ 17–18. Petitioner's pending proceedings before the Luxembourg District Court satisfy the requirement of a proceeding in a foreign tribunal. *See Matter of HSBC Sec. Servs.*

*(Luxembourg) S.A.*, No. 26-MC-00109 (MMG), 2026 WL 1298453, at *1 (S.D.N.Y. May 12, 2026) (granting application that sought discovery for use in proceedings before Luxembourg District Court and Luxembourg Court of Appeal); *In re Blue Skye Fin. Partners S.A.R.L.*, No. 22 Misc. 171 (KPF), 2022 WL 2441074, at *3 (S.D.N.Y. July 5, 2022) (finding that applicant's intent to use the discovery in ongoing actions pending before Luxembourg District Court satisfied for-use requirement); *see also In re Furstenberg Fin. SAS*, 18-mc-44 (JGK), 2018 WL 3392882, at *4 (S.D.N.Y. July 12, 2018) (finding that petitioner's intent to use the discovery in support of a contemplated criminal complaint in Luxembourg satisfied the for-use requirement). And Petitioner intends to use the materials in those qualifying proceedings. *Mees v. Buiter,* 793 F.3d 291, 298-99 (2d Cir. 2015) (reversing lower court and explaining that for-use test is not a "necessity requirement" but is instead met when an applicant merely "seek[s] discovery of any materials that can be made use of in the foreign proceeding to increase her chance of success"); *see also In re Novalpina Cap. Partners I GP S.À.R.L.*, 23 Misc. 25 (PGG), 2025 WL 1160854, at *17 (S.D.N.Y. Apr. 21, 2025) (finding for-use test met where it was "plausible that Respondents have documents and information relevant" to issue in foreign proceeding).

C. Petitioner is an Interested Person.

Petitioner is an interested person under Section 1782 because it is a party to the Luxembourg court proceedings, Komninos Decl. ¶¶ 10–11, and there is "[n]o doubt litigants are included among, and may be the most common example of, the 'interested persons' who may invoke § 1782," *Intel*, 542 U.S. at 256. The Luxembourg District Court also confirmed that Petitioner has an interest in protecting SGH Capital's assets that may be affected by ASTATE's liquidation operations and that this interest conferred standing on Petitioner to seek relief that would protect those assets. Komninos Decl. ¶ 14.

### III. The Discretionary *Intel* Factors Weigh in Favor of Permitting the Discovery Petitioner Seeks.

Each of the discretionary factors also weighs in favor of permitting discovery here.

A. <u>The Relevant Discovery Is Not Accessible Absent Section 1782 Aid.</u>

"The purpose of the first factor is to root out situations in which 'the need for § 1782(a) aid is not as apparent' because '[a] foreign tribunal has jurisdiction over' the party from whom discovery is sought and 'can itself order [that party] to produce evidence.'" *Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 160 n.7 (2d Cir. 2022) (citing *Intel*, 542 U.S. at 264). Consistent with that purpose, the first discretionary *Intel* factor weighs in favor of granting the application for two reasons.

First, Cooley is not a party to the Luxembourg court proceedings. *See* Komninos Decl. ¶ 5. This weighs in favor of granting the petition. *See*, *e.g.*, *Matter of HSBC Sec. Servs.*, 2026 WL 1298453, at *2.[3]

Second, courts have found that this factor favors disclosure when the foreign tribunal lacks discovery mechanisms that are comparable to U.S. discovery. *See*, *e.g.*, *In re Ex Parte Application of Porsche Automobil Holding SE for an Order Pursuant to 28 U.S.C. §1782 Granting Leave to Obtain Discovery for Use in Foreign Proc.*, No. 15-MC-417 (LAK), 2016 WL 702327, at *8 (S.D.N.Y. Feb. 18, 2016) (finding that first discretionary factor weighs in favor of granting application where "there is little question that [the foreign tribunal] cannot and, in any case, would not order the type (and scope) of evidentiary production" sought by

[3] When a subpoena seeks documents from the United States counsel of a party in the foreign proceeding, the factor weighs against the applicant because it is essentially seeking discovery from its opponent in the litigation. *See Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018). However, this analysis is inapplicable here because Cooley is not counsel to a party in the foreign proceeding and Scentbird, Cooley's client, is outside of the Luxemburgish's court's reach. Cooley "is not being compelled to turn over documents to" its client's adversary seeking to use them against its client abroad, so "the 'real party' rule of *Kiobel* does not affect the Court's consideration of the first *Intel* factor." *In re Tel. Media Grp. Ltd.*, 23-MC-215 (JGLC), 2023 WL 5770115, at *7-8 (S.D.N.Y. Sept. 6, 2023).

application); *In re Application of Auto-Guadeloupe Investissement S.A., for an Order to Take Discovery Pursuant to 28 U.S.C. Section 1782*, No. 12 MC 221(RPP), 2012 WL 4841945, at *5–6 (S.D.N.Y. Oct. 10, 2012) (finding that first discretionary factor favored granting application where materials could not be discovered under foreign tribunal's restrictive discovery mechanisms). Luxembourg lacks a procedural equivalent to U.S.-style discovery in civil proceedings. *See* Komninos Decl. ¶ 19. Instead, the limited mechanisms allow a party to obtain specific documents or evidence held by another party or third party if they can identify the documents sought with sufficient specificity. *Id.* As a result, this factor favors granting the petition.

Because Cooley is not a party to the Luxembourg District Court proceedings and the Luxembourg courts do not have a comparable pretrial mechanism for obtaining the requested discovery, the first discretionary *Intel* factor weighs in favor of granting the application.

B. <u>The Luxembourg Court Will Be Receptive to Evidence Obtained Through This Application</u>.

The second discretionary *Intel* factor, whether the Luxembourg courts will be receptive to the evidence, also weighs in favor of granting the application. When assessing this factor, courts consider "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. "Rather than require an affirmative showing that the foreign tribunal will accept the evidence sought, the Second Circuit has instructed district courts to consider only authoritative proof that a foreign tribunal would *reject* evidence obtained with the aid of section 1782." *In re Application of Mediterranean Shipping Co. S.A.*, Case No. 1:25-mc-00598 (JLR), 2026 WL 1256429, at *5 (S.D.N.Y. May 7, 2026) (internal quotation marks omitted) (citing *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995)). "The

party opposing a Section 1782 application bears the burden of demonstrating that a foreign court would not be receptive to assistance from a U.S. court." *In re Porsche Automobil Holding SE*, 2016 WL 702327, at *8.

Courts have repeatedly found no grounds to suggest that Luxembourgish courts are unreceptive to U.S. federal-court assistance. *See, e.g., In re Novalpina Cap. Partners I GP S.À.R.L.*, 2025 WL 1160854, at *25 (finding second discretionary factor favored disclosure where there was no basis for court to conclude that Luxembourg courts would not be receptive to federal court assistance); *In re Blue Skye Fin. Partners S.A.R.L.*, 2022 WL 2441074, at *3 (same); *Matter of HSBC Sec. Servs.*, 2026 WL 1298453, at *2 (same). *See also* Komninos Decl. ¶ 20 (explaining that Luxembourg courts are generally receptive to evidence obtained abroad). The second discretionary *Intel* factor therefore weighs in favor of granting the application.

C. Petitioner Is Not Attempting to Circumvent Foreign Proof-Gathering Restrictions.

The third discretionary *Intel* factor "seeks to identify 'attempt[s] to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States.'" *In re B&C KB Holding GmbH*, 22-mc-00180 (LAK) (VF), 2023 WL 1777326, at *7 (S.D.N.Y. Feb. 6, 2023) (quoting *Intel*, 542 U.S. at 264-65), *objections overruled*, 22-mc-180 (LAK) (VF), 2023 WL 4544775 (S.D.N.Y. June 8, 2023), *aff'd sub nom. In re B&C KB Holding GmbH*, No. 23-1014(L), 2024 WL 3170983 (2d Cir. June 26, 2024). Circumvention exists when the foreign tribunal has rules that expressly preclude the discovery sought through section 1782 or the requesting party is acting in bad faith.

"In the context of § 1782 and the third *Intel* factor, circumvention occurs where the applicant uses a § 1782 application to avoid measures that are *intended* to restrict certain means of gathering or using evidence." *Fed. Republic of Nigeria*, 27 F.4th at 153 (emphasis in original). Circumvention of this type occurs only when the jurisdiction has proof-gathering restrictions,

such as privileges, that prohibit the acquisition or use of certain materials rather than rules that fail to facilitate investigation of claims by empowering parties to require their adversarial and non-party witnesses to provide information. *Id.*; *accord Mees*, 793 F.3d at 303 n.20 (distinguishing between rules of the foreign jurisdiction that "prohibit the acquisition or use of certain materials" and rules that merely "*fail to facilitate* investigation of claims" (emphasis in original)).

Alternatively, circumvention can exist if an objecting party establishes that the party seeking discovery "engaged in a bad faith endeavor to misuse Section 1782." *In re B&C KB Holding GmbH*, 2023 WL 1777326, at *7 (finding third discretionary factor favored discovery because there was nothing in the record suggesting that the applicant attempted to circumvent proof-gathering restrictions) (internal quotation marks omitted) (citation omitted); *Alerte Congolaise Pour L'environnement Et Les Droits De L'homme v. Symbion Power LLC*, 25 Misc. 480 (PAE), 2026 WL 2151394, at *8 (S.D.N.Y. July 27, 2026) (same). In considering a claim of bad faith, courts recognize that Section 1782 does not contain a "foreign-discoverability requirement," "foreign-admissibility requirement," or "exhaustion or quasi-exhaustion requirement." *See In re Porsche Automobil Holding SE*, 2016 WL 702327, at *9 (internal quotation marks omitted).

Petitioner is not seeking to circumvent proof-gathering restrictions or acting in bad faith. Luxembourg courts are receptive to evidence obtained abroad, and there are no apparent statutory or procedural prohibitions that preclude a party from obtaining or relying on lawfully obtained evidence. *See* Komninos Decl. ¶ 20. Accordingly, this factor weighs in favor of granting discovery. *See In re Blue Skye Fin. Partners S.A.R.L.*, 2022 WL 2441074, at *3

(granting discovery where nothing in the record suggested that the applicant was seeking to circumvent Luxembourgish proof-gathering restrictions or policies).

D. This Application Is Not Unduly Intrusive or Burdensome.

The final discretionary *Intel* factor looks to whether the discovery sought is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. "[A] district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees*, 793 F.3d at 302. Under this standard, the discovery requests should be tailored to seek information relevant to the parties' claims and proportional to the needs of the case. *Matter of HSBC Sec. Servs.*, 2026 WL 1298453, at *2. The party resisting discovery on this ground bears the burden of showing specifically how each request is irrelevant, overbroad, burdensome or oppressive. *See Alerte Congolaise Pour L'environnement*, 2026 WL 2151394, at *9. If the court has concerns about the scope of the discovery, "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." *Euromepa*, 51 F.3d at 1101.

Petitioner's subpoenas contain only four requests that are narrowly tailored to seek documents directly relevant to the issues in the Luxembourg court proceedings. The requests focus on specific communications that Cooley may have had with ASTATE or other people associated with it. Notably, to minimize burden, the subpoenas are temporally limited and seek only documents but not deposition testimony. As a result, any burden that Cooley may incur is both modest and proportionate to the needs of the Luxembourg court proceedings.

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court grant the petition as soon as practicable so that the requested subpoena can be issued and such other and further relief as may be just.

Dated: October 21, 2026
New York, New York

**COHEN & GRESSER LLP**

*/s/ Daniel H. Tabak*

Daniel H. Tabak
Christian R. Everdell
Daniel Joiner
800 Third Avenue, 21st Floor
New York, NY 10022
Phone: (212) 957-7600
Fax: (212) 957-4514
dtabak@cohengresser.com
ceverdell@cohengresser.com
djoiner@cohengresser.com

*Attorneys for Petitioner GD S.à r.l.*